# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Christina L., | Civ. No. 17-4627 (BRT) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Nancy A. Berryhill, Acting Commissioner of Social Security, | |
| Defendant. | |

Thomas A. Krause, Esq., Schott, Mauss & Associates, PLLC, counsel for Plaintiff.

Kizuwanda Curtis, Esq., Special Assistant U.S. Attorney, counsel for Defendant.

BECKY R. THORSON, United States Magistrate Judge.

Pursuant to 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability insurance benefits. This matter is before the Court on the parties' cross–motions for summary judgment, in accordance with D. Minn. LR 7.2(c)(1). (Doc. Nos. 13, 16.) For the reasons stated below, the Court concludes that the Administrative Law Judge's ("ALJ") decision is supported by substantial evidence in the record. Therefore, Plaintiff's motion is denied and Defendant's motion is granted.

**I.      Background**

Plaintiff alleged a disability onset date of April 11, 2014. (Tr. 19, 84.)[1] In a decision dated September 20, 2016, the ALJ proceeded through the five-step sequential evaluation process[2] and found that Plaintiff was not disabled. (Tr. 19–35.) At step two, the ALJ concluded that Plaintiff suffers from depression and anxiety, and that those ailments are severe impairments as defined by the Social Security Act. (Tr. 21.) The ALJ also found, however, that Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but limited to routine, repetitive, simple work, and not requiring any public contact or more than brief and superficial contacts with co-workers and supervisors. (Tr. 25.) The ALJ then found at step five that Plaintiff was not disabled because she could perform jobs that exist in significant numbers in the national economy. (Tr. 34.)[3]

---

[1]     Throughout this Opinion and Order, the abbreviation "Tr." is used to reference the Administrative Record. (Doc. No. 11.)

[2]     At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity. Step two requires the ALJ to determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." At step three, the ALJ determines whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listed impairment. Before step four, the ALJ determines the claimant's residual functional capacity. At step four, the ALJ determines whether the claimant has the RFC to perform the requirements of her past work. And at step five, the ALJ determines whether the claimant can do any other work considering her RFC, age, education, and work experience. *See* 20 C.F.R. § 404.1520(a)–(f).

[3]     The vocational expert testified at Plaintiff's hearing that the demands of Plaintiff's past work as a case aide financial worker exceeded her RFC. (Tr. 34, 67.)

## II.     Standard of Review

The Commissioner's decision will be upheld if the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010) (citations omitted). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). This standard is "something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (citations omitted). In other words, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

If, after review, the record as a whole supports the Commissioner's findings, the Commissioner's decision must be upheld, even if the record also supports the opposite conclusion. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008); *Goff v. Barnhart* 421 F.3d 785, 789 (8th Cir. 2005). The whole record is considered, including "evidence that supports as well as detracts from the Commissioner's decision," and the Court will not reverse simply because some evidence may support the opposite conclusion. *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006). If it is "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings," the Commissioner's decision must be affirmed. *Pearsall v. Massanarri*, 274 F.3d 1211, 1217 (8th Cir. 2001).

**III. Analysis**

Plaintiff argues that the ALJ should have given the work-related limitations from her "team" of mental health providers great weight, if not controlling weight. (Doc. No. 14, Pl.'s Mem. 10–32.) Plaintiff's "team" consists of Dr. Juan Belalcazar Canal, therapist David Munson, and psychologist Dr. Sherri Jeffery. Plaintiff explains that the relevant difference between the opinions of her treating providers and the ALJ's RFC finding is her providers' finding that she would be absent from work more than four days per month, be off task twenty percent of the workday, and had marked to extreme limitations or was unable to meet competitive standards in areas including maintaining attention and regular attendance, completing a normal workday or workweek, and dealing with work stress. (Pl.'s Mem. 12–13; Tr. 372–75, 381, 383, 416–19, 432–33, 517–18.) As explained below, the ALJ gave good reasons for rejecting these opinions, and the ALJ's contrary RFC finding is supported by substantial evidence in the record.

Generally, a treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) (citation omitted). Such weight is "neither inherent nor automatic and does not obviate the need to evaluate the record as [a] whole." *Cline v. Colvin*, 771 F.3d 1098, 1103 (8th Cir. 2014) (internal citations omitted). The regulations mandate that the ALJ must "always give good reasons" for the weight given to a treating physician opinion. 20 C.F.R. § 404.1527(c)(2). "Good reasons for assigning lesser weight to the opinion of a

treating source exist where the treating physician's opinions are themselves inconsistent, or where other medical assessments are supported by better or more thorough medical evidence." *Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017). An ALJ may "justifiably discount" a treating opinion when it is "inconsistent or contrary to the medical evidence as a whole." *Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011).[4]

The ALJ explained that there was a distinct lack of clinical abnormalities in the treatment record to explain or support the extreme limitations set forth by Dr. Belalcazar, Dr. Jeffery, and Mr. Munson. (Tr. 32–34.) Instead, the opinions appeared to be restatements of Plaintiff's subjective allegations, such as having low energy, suicidal ideation, poor concentration, impaired memory, and being easily overwhelmed. (Tr. 371, 373, 379, 381, 417, 422.) Treating opinions are not entitled to weight when based on subjective complaints instead of objective evidence. *See Gieseke v. Colvin*, 770 F.3d 1186, 1188–89 (8th Cir. 2014) (finding that treating opinions "were not supported by objective medical evidence in the administrative record," and were based "almost entirely" on "subjective complaints").

Instead of subjective complaints, the ALJ relied on objective observations from the clinical setting and facts documented in the record. (Tr. 32–34.) As the ALJ noted,

---

[4] The factors to consider for assigning weight to medical opinions, including those of treating providers, are set forth by regulation. *See* 20 C.F.R. § 404.1527(c) (explaining "How we weigh medical opinions"). These factors include considering the examining relationship, giving more weight to the opinion of an examining source than a non-examining source; the treatment relationship, including the length of the relationship, the frequency of examination, and the nature and extent of the relationship; supportability; consistency; and specialization. 20 C.F.R. § 404.1527(c)(1)–(5).

5

Plaintiff's mental health treatment was mostly conservative, involving medication and outpatient therapy. (*See, e.g.*, Tr. 300–01, 310, 343, 358, 366, 388, 390.) Plaintiff was evaluated as an inpatient only once, but she demanded and was immediately granted her release, which was approved by Dr. Belalcazar. (Tr. 397.) Dr. Belalcazar released the hold even after Plaintiff stated she had plans to overdose on pills. (Tr. 32, 392, 397.) Plaintiff repeatedly stated that she would not commit suicide because it was against her religious beliefs and she would never go through with it. (Tr. 287–90, 395.) And in contrast to Dr. Belalcazar's opinion that Plaintiff was severely limited in social functioning, treatment notes indicate that Plaintiff was consistently pleasant, cooperative, and able to establish rapport. (Tr. 32, 286, 294, 298–99, 300–12, 344, 350–52, 362, 376, 386–89, 391, 395, 399, 405, 408, 410, 424, 429, 440–41, 443, 446, 455, 457, 459.)

Just one week after her alleged onset date, Plaintiff reported "feeling good" and that she stopped taking her medication. (Tr. 19, 26, 348.) Plaintiff started feeling depressed, however, so she restarted her medication, and as a result, she felt relieved and less depressed. (Tr. 348.) On December 11, 2014, Plaintiff indicated she was not doing the light therapy prescribed by Dr. Belalcazar. (Tr. 390.) Plaintiff was also missing appointments with Dr. Munson. (*Id.*) Noncompliance with therapy recommendations is a sufficient basis for the denial of benefits. *See Bernard v. Colvin*, 774 F.3d 482, 487 (8th Cir. 2014) (finding substantial evidence for denial of benefits to claimant who was not taking anti-depressant medication).

Plaintiff subsequently reported feeling better and expressed excitement about her daughter giving birth to a grandchild, plans to study medical coding, and hoping to find a

job. (Tr. 405–06.) On February 10, 2015, Plaintiff reported keeping busy during the day doing cleaning and laundry, and that she was looking forward to the spring. (Tr. 409–10.) Ultimately, Plaintiff's mood seemed to depend a great deal upon her personal circumstances and stress related to finances, unemployment, and bereavement. (Tr. 367, 395, 430.) For example, Plaintiff indicated that she was distressed by her lack of employment and "waiting for a check to come." (Tr. 390.) On another occasion, she stated that she was hopeful that her request for social security disability benefits would be approved, which would alleviate some of her financial strain. (Tr. 463.) Plaintiff also stated she was looking for a part-time job and expressed remorse about quitting her job, stating that she "should not have stopped working." (Tr. 445–46.) On November 18, 2015, Mr. Munson noted mild to moderately impaired attention, concentration, and memory, but Munson acknowledged the impact that situational stressors had on the reported increase in symptoms, observing that Plaintiff "recently experienced an increase in symptoms after attempting to take college classes." (Tr. 430.) Depression due to situational stressors is not substantial evidence in support of disability. *See Dunahoo v. Apfel*, 241 F.3d 1033, 1040–41 (8th Cir. 2001). Moreover, a claimant's search for work after her alleged onset date undermines a claim of disability. *See Melton v. Apfel*, 181 F.3d 939, 942 (8th Cir. 1999) (finding that Plaintiff's "job search undermines his claim that he was unable to work").

     Further, the ALJ identified numerous inconsistencies in the treating opinions. On April 14, 2015, for example, Plaintiff told Dr. Belalcazar that she had low activity and interest, poor concentration, and passive suicidal ideation. (Tr. 28–29, 407.) However, in

7

a statement completed the same day, Dr. Belalcazar indicated normal mental status and only mild impairment in attention, concentration, and memory. (Tr. 28–29, 399.) Mr. Munson indicated that Plaintiff was incapable of meeting competitive work standards, but later wrote that Plaintiff had only mild to moderate impairments in attention, concentration, and memory. (Tr. 33, 414–19, 429–30.) Internal inconsistencies provide good reasons to discount treating opinions. *See Lawson v. Colvin*, 807 F.3d 962, 967 (8th Cir. 2015); *Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011).

Finally, the ALJ discussed Plaintiff's ability to perform a variety of daily living activities that conflicted with the opinions of her treatment providers. (Tr. 22–23.) Plaintiff looked for work, took care of her granddaughter, and fixed-up a small room at her house for relaxation/meditation. (Tr. 449, 455, 457, 459–60.) She attended church, cared for her dog, took online classes, managed her own personal care, prepared meals, did housework, went shopping, and managed her financial affairs. (Tr. 56–58, 205–07, 228–29.) As the ALJ explained, Plaintiff "generally reported a wider range of activities in the written record" than at the hearing, and the ALJ gave "more weight to the statements made in the course of actual medical treatment." (*Id.*) These activities of daily living are incompatible with the limitations set forth by Plaintiff's treating providers. *See Toland v. Colvin*, 761 F.3d 931, 936 (8th Cir. 2014) ("Though a claimant need not be completely bedridden" to be considered disabled, "if a doctor evaluates a patient as having more

physical limitations than the patient actually exhibits in her daily living, an ALJ need not ignore the inconsistency.").[5]

## ORDER

Based on the foregoing, and all the files, records, and submissions herein,

**IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 13) is **DENIED**; and

2. Defendant's Motion for Summary Judgment (Doc. No. 16) is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: February 25, 2019.                               *s/ Becky R. Thorson*_____
                                                       BECKY R. THORSON
                                                       United States Magistrate Judge

---

[5] Plaintiff submitted additional evidence to the Appeals Council in support of her request for review of the ALJ's decision. (Tr. 1–15.) The Appeals Council denied Plaintiff's request for review, stating that the additional evidence, primarily an October 13, 2016 letter from Dr. Jeffrey, "does not show a reasonable probability that it would change the outcome of the decision." (Tr. 2.) This Court does not have jurisdiction to review the Appeals Council's denial of review. *See Mackey v. Shalala*, 47 F.3d 951, 953 (8th Cir. 1995). Nonetheless, the Court included the additional evidence submitted by Plaintiff to the Appeals Council in "the substantial evidence equation." *Id.*; *see also Cunningham v. Apfel*, 222 F.3d 496, 500 (8th Cir. 2000); *Browning v. Sullivan*, 958 F.2d 817, 823 (8th Cir. 1992) ("Having determined that we have no jurisdiction to review the Appeals Council's denial of review, the relevant issue become whether the new evidence . . . submitted to the Appeals Council changes our conclusion that there is substantial evidence to support the ALJ's decision.").